IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| AJUA ALEMANJI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-09-500 |
| | * | |
| ALFRED N. TENGEN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*****************************************************************************

## MEMORANDUM OPINION

Plaintiff Ajua Alemanji brings this action against Defendant Alfred N. Tengen asserting breach of contract and fraud. Currently pending before the Court is Defendant Alfred N. Tengen's Motion to Dismiss (Docket No. 10) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105(6) (D. Md. 2008). For the reasons stated more fully below, the Court will deny Defendant's Motion.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On or about August 31, 2008, Ajua Alemanji, then a resident of Pennsylvania, contacted Alfred N. Tengen, then a resident of Maryland, about shipping products from the United States to Cameroon. (Compl. ¶ 2, 6.) The two parties had a series of conversations between August 31 and September 8, 2008, during which Mr. Alemanji explained he intended to travel to Cameroon with his wife to market and sell most of the shipped products in November and December of 2008 during the Christmas season. (Compl. ¶ 8-9.) Mr. Alemanji explained he also had some products to deliver to customers who had already purchased them, and also planned to transport

1

some personal items for his friends and family, including a car. (Compl. ¶ 5.) Mr. Tengen informed Alemanji he would charge $3,450 for each container shipped, and approximately $4,000 for removal of the car from customs. (Compl. ¶9.) On or about September 8, 2009, the parties memorialized their agreement that Tengen would arrange shipment for nineteen boxes of products for sale to Cameroon and a 2002 Toyota Camry, to be delivered in Cameroon on or before October 31, 2008, and to be sold in Cameroon in December, 2008. On the same date, Mr. Alemanji delivered to Mr. Tengen the nineteen boxes of products and the car, which together valued $56,789, and paid him $3,450 for the service of shipping the products. (Compl. ¶ 10-11.)

Mr. Alemanji left several voicemail messages for Mr. Tengen over the next several weeks. Finally, on or about September 29, 2008, Mr. Alemanji spoke with Mr. Tengen and learned that Mr. Tengen had not yet received a Bill of Lading for the shipment of the products and that Mr. Alemanji's products would not be shipped until on or about October 15, 2008 and would not arrive in Cameroon until around November 30, 2008. (Compl. ¶ 13.) Mr. Alemanji objected to the change in shipment date and arrival, but felt it would be too difficult to arrange alternative shipment at that point, and thus succumbed to the new date. He and his wife then purchased airline tickets for travel to Cameroon in December to claim and sell their goods. (Compl. ¶ 14.)

On or about November 28, 2009, Mr. Alemanji spoke with Mr. Tengen again, and learned that Mr. Tengen had again delayed the shipment arrival date so that the products would now reach Cameroon on or about December 18, 2008. (Compl. ¶ 17.) Mr. Alemanji objected to this delay in shipment as it would not leave sufficient time to sell the purchased products before Christmas. (Compl. ¶ 17.) Then, a few days later on or about December 3, 2008, Mr. Alemanji learned that Mr. Tengen actually expected the shipment to arrive two days later, on December

20, 2008. (Compl. ¶ 19.)  Mr. Alemanji and his wife kept their travel plans, regardless, deciding they would attempt to sell the good after the Christmas season. Because of the shipment delay, Mr. Alemanji re-purchased items amounting to $17,755, to deliver to customers who had already purchased products so that he could deliver these items while he was in Cameroon. (Compl. ¶ 20.) On or about December 19, 2008, Mr. Tengen sent a copy of the Bill of Lading to Mr. Alemanji for the shipment of the products.

On December 22, 2008, Mr. Alemanji and his wife arrived in Cameroon. (Compl. ¶ 23.) In Cameroon, Mr. Alemanji was unable to reach Mr. Tengen on either December 24 or December 30, 2008, even though Mr. Tengen had said he would arrive on December 3, 2008, to convey the items to Mr. Alemanji. (Compl. ¶ 23.) Mr. Alemanji intended to sell some of the products and deliver the car and personal items to his family. Mr. Alemanji then learned that Mr. Tengen would be in Cameroon on January 6, 2009, to claim the shipment.[1] (Compl. ¶ 24.) On January 6, 2009, Mr. Alemanji spoke with Mr. Tengen who informed him he would arrive in Cameroon on January 12, 2009. (Compl. ¶ 25.) Mr. Alemanji and wife, however, returned to the United States as their flight was already scheduled. (Compl. ¶ 25.)

On or about January 29, 2009, Mr. Alemanji's father, on behalf of Mr. Alemanji, paid approximately $7,000 for the car to clear customs, even though Mr. Tengen had said that the cost would be only $4,000. (Compl. ¶ 28.) On or about February 7 and 9, 2009, Mr. Alemanji's father, on behalf of Mr. Alemanji, paid an additional approximately $1,000 for the release of Mr. Alemanji's personal items. (Compl. ¶ 28.) Lastly, on or about February 9, 2009, Mr. Tengen delivered Mr. Alemanji's car and products to Mr. Alemanji's father in Cameroon. (Compl. ¶ 28.)

---

[1] It is uncertain when exactly Mr. Alemanji learned of Mr. Tengen's new date of arrival.

In his complaint, Mr. Alemanji alleges that Mr. Tengen breached the agreement by failing to deliver Mr. Alemanji's car and products by October 31, 2008 (or, at any time prior to Christmas); that Mr. Tengen repeatedly misrepresented to Mr. Alemanji the anticipated delivery date of Mr. Alemanji's car and products for the purpose of securing the agreement with Mr. Alemanji to arrange for the transportation of Mr. Alemanji's goods; that at various times between September and December 2008 (and even into January 2009), Mr. Tengen made these representations knowing them to be false; that Mr. Tengen knew that Mr. Alemanji would rely on these representations in entering into the agreement and forego the opportunity to contract with another individual or company for the transportation of Mr. Alemanji's goods; that Mr. Alemanji relied on Mr. Tengen's representations and delivered to Mr. Tengen his car and products, which he needed in Cameroon by October 2008; and that by reason of the foregoing, Mr. Alemanji has been damaged. On May 14, 2009, Defendant filed the pending Motion to Dismiss for lack of subject-matter jurisdiction and failure to state a claim (Docket No. 10.)

## II.     ANALYIS

### A.     Motion to Dismiss under Rule 12(b)(1)

#### 1)     Standard of Review

Motions to dismiss for lack of subject-matter jurisdiction are governed by Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject-matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

### 2) Subject-Matter Jurisdiction

Under 28 U.S.C. § 1332, district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. Defendant argues that the Court should dismiss the case for Plaintiff's failure to affirmatively plead diversity of citizenship, and cites decisions of courts that have done so. *See, e.g.*, *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) ("It is established that an allegation of residency does not satisfy the requirement of an allegation of citizenship."). Plaintiff responds with a request that the Court allow it to correct the technical defect of its failure to plead diversity of citizenship.

The Court finds that Plaintiff must plead diversity of citizenship, and will grant Plaintiff leave to amend its Complaint to do so. Courts may allow plaintiffs to amend their complaints to cure technical defects. Pleading diversity of residence instead of diversity of citizenship is such a curable technical defect. *See Kinney v. Columbia Savings & Loan Association*, 191 U.S. 78, 24 S. Ct. 30, 48 L. Ed. 103 (1903)(granting leave to amend petition to show citizenship of plaintiff); *Molnar-Szilasi v. Sears Roebuck & Co.*, 429 F. Supp. 2d 728, 731 (D. Md. 2006) (allowing Plaintiff to amend its notice of removal to allege diversity of citizenship, rather than merely diversity of residence; and distinguishing from a case where court did not allow amendment because defendants "candidly admitted that they were entirely unsure of and could not establish plaintiff's citizenship" because here Plaintiff requested amendment and alleged other facts indicating citizenship). The Court assumes, based on the Plaintiff's representations, that there is diversity of citizenship in this case and that Plaintiff's failure to plead diversity of citizenship is

merely a technical error that can be amended. The Court thus agrees with Defendant's contention that Plaintiff must plead diversity of citizenship, and will give Plaintiff leave to amend its Complaint to do so.

Additionally, the Plaintiff alleges that the amount in controversy is more than $75,000. Defendant, on the other hand, contends that the Plaintiff has failed to meet the amount in controversy requirement because in Maryland the amount of damages recoverable for breach of contract is the amount that may reasonably be viewed as arising naturally from the breach of the contract, or was what the parties considered a probable result of the breach of the contract. Defendant argues that the Court cannot find that Tengen contemplated it would be responsible for Alemanji's lost profits resulting from its failure to comply with the shipping agreement because the agreement does not specify the type of products, specifies no remedy for a breach, does not specify that time was of the essence or that late delivery would result in lost profits. (Docket No. 10 at 7). Second, Defendant argues that Plaintiff's assertions regarding damages are speculative and thus insufficient to satisfy the amount in controversy requirement. Defendant contends that Plaintiff has failed to prove the lost profit damages to a reasonable certainty and that it provides no objective evidence supporting its lost profits claim.

Dismissal of a Complaint for failure to meet the amount in controversy requirement is appropriate if it appears to a legal certainty that the plaintiff's damages are for less than the jurisdictional amount. In determining whether a plaintiff has met the amount of controversy requirement in a contract case, a Court may consider damages stemming from breach of contract that were reasonably expected by the parties. In Maryland, a breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract, and may be inferred from the refusal of a party to recognize the existence of a contract, or the doing

of something inconsistent with its existence. *See Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195, 203, 110 A.2d 671, 675 (Md. 1955). The Court can only hold a party responsible "for such consequences as may be reasonably supposed to have been in the contemplation of both parties at the time of making the contract." *A.B. Corp. v. Futrovsky*, 259 Md. 65, 71, 267 A.2d 130, 133 (1970). But, as Plaintiff notes, "[I]t is not necessary that the parties ever have considered the question of damages for the defaulting party to be liable for those damages which, in the normal course of events, would reasonably be expected to flow from a breach in the contract terms." *Id.* at 75.

The Court is satisfied that Plaintiff sufficiently shows its damages were reasonably expected to flow from a breach of the contract. The Court agrees with Plaintiff that "a reasonable business person would contemplate that if actual delivery of the good did not occur until January, as was the case here, the profits that were attainable during the Christmas shopping season would no longer be available." (Docket No. 16). Plaintiff and Defendant agree that they entered into an agreement for Defendant to transport and deliver Mr. Alemanji's car and products from the United States to Cameroon by October 31, 2008 for the express purpose of Mr. Alemanji being able to sell those goods in Cameroon before the Christmas season at substantial profit. Moreover Plaintiff complied with all of his obligations under the agreement, including paying Defendant $3,450 for delivery of Mr. Alemanji's car and products by October 31, 2008. Defendant failed to deliver Mr. Alemanji's car and products by October 31, 2008 (or, for that matter, at any time prior to Christmas 2008), and that Mr. Alemanji was damaged as a result thereof. According to Plaintiff's exhibits 2-3, and 5-7, the Plaintiff paid $56,789 for the products in the United States it expected to sell in Cameroon but could not; shipping costs paid to Defendant were $3,450; additional goods purchased for delivery when the initial purchased goods failed to arrive in

Cameroon cost $17,755; and charges in Cameroon for claiming goods amounted to $8,000. In total, the sum of these claims amounts to $85,994, well above the $75,000 jurisdictional requirement. Therefore, the Plaintiff's complaint withstands the Defendant's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

    **B.**    **Motion to Dismiss under Rule 9(b)**

        **1)**    **Standard of Review**

Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff "must state with particularity the circumstances constituting fraud or mistake**.**" Fed. R. Civ. P. 9(b); *see also Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009) (describing Rule 9(b)). In addition, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999).

        **2)**    **Fraud**

Defendant argues that Mr. Alemanji has failed to state a claim for fraud. First, Defendant argues that a breach of contract does not give rise to tort claims absent particularized allegations of fact that establish tort duties independent of the contract, and that Plaintiff has failed to show an independent duty. Plaintiff responds that courts find an independent duty where a defendant "concealed a material fact for the purpose of defrauding the plaintiff." (Docket No. 16) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003)). Plaintiff also responds that it alleges intentional fraud, and alleges that the defendant actively misrepresented the delivery date of the car and products to entice Plaintiff to enter into the

shipping agreement, and then after the agreement, misrepresented the arrival date of the shipment several times.

The Court believes that Plaintiff has made out a claim for intentional fraud. In Maryland, to prevail on an action for fraud or misrepresentation, a plaintiff must allege that: (1) a defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the [mis]representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *McKenzie v. Comcast Cable Comms., Inc.*, 393 F. Supp. 2d 362, 2005 (4th Cir. 2005) (citations omitted). In the context of a claim of intentional misrepresentation, a duty to disclose arises where the defendant makes an active misstatement of fact, or only a partial fragmentary statement of fact, which misleads the plaintiff and results in a plaintiff's injury. *See Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003) ("Plaintiff must prove either that Defendant had a duty to disclose a material fact to them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff.") Here, Plaintiff has alleged each of the necessary elements.

Defendant also contends that Count II of the Complaint fails to allege fraud with the requisite particularity. Defendant argues that Plaintiff's Complaint is not specific enough because Plaintiff does not allege any information regarding the Plaintiff's state of mind, and thus the allegations are conclusory. Defendant, citing *Miller v. Fairchild Industries, Inc.*, 97 Md. App. 324, 342, 629 A.2d 1293, 1302 (Md. App., 1993), argues that the Plaintiff must also put forward evidence showing the promisor made the promise with the intention not to perform, and that Plaintiff has not done so. Plaintiff responds that it has alleged fraud with the requisite

particularity. Plaintiff explains that it "has not only adequately alleged the 'time, place, content and identify of authorship of any alleged misrepresentation' but has plead Defendant's self-imposed requirements—knowledge and intent not to perform." (Docket No. 16.)

The Court finds that Plaintiff has met the pleading requirements for its intentional fraud claim. The Court is satisfied that the Plaintiff's claims meet the 9(b) standard and that the Plaintiff has adequately pled a claim of fraud against the Defendant. The "minimum type of circumstances that must be pleaded include the time, place, content, and identity of authorship of any alleged misrepresentation." *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 545-546 (4th Cir. 1987). Plaintiff has met this burden. Specifically, the Plaintiff has alleged that Defendant repeatedly misrepresented to Mr. Alemanji the anticipated delivery date of Mr. Alemanji's car and products, for the purpose of securing the agreement with Mr. Alemanji to arrange for the transportation of Mr. Alemanji's goods. Moreover, at various times between September and December 2008 (and even into January 2009), Defendant made these representations knowing them to be false and knowing that Mr. Alemanji would rely on these representations in entering into the agreement, thereby foregoing the opportunity to contract with another individual or company for the transportation of Mr. Alemanji's goods. Mr. Alemanji did rely on Defendant's representations and delivered his car and products, which he needed in Cameroon by October 2008, to Defendant. Furthermore, he was damaged by Defendant's failure to comply with this arrangement. The Court will therefore deny the Defendant's Motion to Dismiss under Rule 9(b).

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss. A separate Order will follow. The Court will also issue a scheduling order in this case.

| | |
|---|---|
| December 1, 2009 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |